# EXHIBIT A



## JOSEPH ABRUZZO
### CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY

**CASE NUMBER: 50-2022-CA-010934-XXXX-MB**
**CASE STYLE: INTREPID OCEANS MARINE LLC V JMS NAVAL ARCHITECTS LLC**

| Search Criteria | Search Results | Case Info | Party Names | Dockets & Documents | Case Fees | Court Events |
|---|---|---|---|---|---|---|

View documents and order certified copies*. See our eCaseView FAQ for step-by-step guidance and information about what documents are available online.

*The Social Security office does not accept electronic certified documents. Any certified copy needed for a name change or benefits with the Social Security office will need to be obtained by mail or in person from one of our office locations.

**Document Icons**

- Document available. Click icon to view.
- Add a certified copy of the document to your shopping cart.
- Document is Viewable on Request (VOR). Click to request.
- VOR document is being reviewed. Click to be notified when available.

Public = 🖹           VOR = 🔒           In Process = ◷           Page Size: 25 ▾

| | Docket Number | Effective Date | Description | Notes |
|---|---|---|---|---|
| | 1 | 11/08/2022 | DIVISION ASSIGNMENT | AA: Circuit Civil Central - AA (Civil) |
| 🖹 🛒 | 2 | 11/08/2022 | CIVIL COVER SHEET | |
| 🖹 🛒 | 3 | 11/08/2022 | COMPLAINT | F/B PLT |
| 🖹 🛒 | 4 | 11/08/2022 | PAID $401.00 ON RECEIPT 4674907 | $401.00 4674907 Fully Paid |
| 🖹 🛒 | 5 | 11/11/2022 | SUMMONS ISSUED | jsposato@conradscherer.com;jthompson@conradscherer.com;AMaya@conradscherer.com AS TO DFT JMS NAVAL ARCHITECTS LLC |
| 🖹 🛒 | 6 | 11/17/2022 | PAID $10.00 ON RECEIPT 4683597 | $10.00 4683597 Fully Paid |
| 🖹 🛒 | 7 | 12/07/2022 | NOTICE OF FILING | PLAINTIFF'S NOTICE OF FILING |

517-5ba93d73-40c9-46c3-90a3-a20b30e67ea4

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u>   COUNTY, FLORIDA

<u>Intrepid Oceans Marine LLC</u>
Plaintiff                                                    Case # _____
                                                             Judge _____

vs.

<u>JMS Naval Architects LLC</u>
 Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
        ☐ Business governance
        ☐ Business torts
        ☐ Environmental/Toxic tort
        ☐ Third party indemnification
        ☐ Construction defect
        ☐ Mass tort
        ☐ Negligent security
        ☐ Nursing home negligence
        ☐ Premises liability—commercial
        ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
        ☐ Commercial foreclosure
        ☐ Homestead residential foreclosure
        ☐ Non-homestead residential foreclosure
        ☐ Other real property actions

☐ Professional malpractice
        ☐ Malpractice—business
        ☐ Malpractice—medical
        ☐ Malpractice—other professional
☐ Other
        ☐ Antitrust/Trade regulation
        ☐ Business transactions
        ☐ Constitutional challenge—statute or ordinance
        ☐ Constitutional challenge—proposed amendment
        ☐ Corporate trusts
        ☐ Discrimination—employment or other
        ☐ Insurance claims
        ☐ Intellectual property
        ☐ Libel/Slander
        ☐ Shareholder derivative action
        ☐ Securities litigation
        ☐ Trade secrets
        ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [ ]
(Specify)

 3

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
  ☐ yes
  ☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
  ☒ no
  ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
  ☒ yes
  ☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
  ☐ yes
  ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ James Sposato    Fla. Bar # 644171
   Attorney or party       (Bar # if attorney)

James Sposato      11/08/2022
 (type or print name)     Date

- 3 -

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

**INTREPID OCEANS MARINE, LLC.,**                    CASE NO.:

     Plaintiffs**,**

v.

**JMS NAVAL ARCHITECTS, LLC.,**

     Defendant.

_____/

## COMPLAINT

Plaintiff, INTREPID OCEANS MARINE, LLC. ("Plaintiff" or "IOM") files this Complaint against Defendant, JMS NAVAL ARCHITECTS, LLC. ("Defendant" or "JMS") and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.     This is an action seeking damages for design defects, including for breach of contract and professional malpractice, with each cause of action for damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs, and attorney's fees, along with a breach of Florida Statute 627.4137.

2.     Plaintiff, IOM, is a Florida limited liability company licensed and doing business in Palm Beach County, Florida.

3.     Defendant, JMS, is a Connecticut limited liability company, licensed with its principal place of business in Mystic, Connecticut.

4.     JMS is a specialty maritime engineering firm that employs design professionals and provides naval architectural and marine engineering services to clients, many of which are located on the West Coast and Gulf Coast, including Florida.

5.      JMS conducts business in the State of Florida, and promotes itself as an experienced and sophisticated maritime architectural and engineering firm with related experience to successfully complete the design for the project further described below.

6.      IOM is a retailer of marine petroleum in Palm Beach County that contracted with professionals to design and construct a tank barge to distribute and sell marine petroleum to vessels in the south Florida intracoastal waterways.

7.      On March 27, 2019, IOM contracted with JMS (the "JMS Contract") to design a 10,000 Gallon Double Hull Tank Barge (the "Pickle") and provide owner's representative services and onsite shipbuilder oversight support for the construction of the Pickle in Palatka, Florida (the "Project").  A copy of the JMS Contract is attached as Exhibit "A."

8.      IOM was presented with the JMS Contract, accepted and executed it in Palm Beach County, Florida.

9.      This Court has jurisdiction over JMS because in accordance with the JMS Contract, JMS consented to the jurisdiction of the State of Florida in the Fifteenth Judicial Circuit Court, Palm Beach County for the purposes of resolving disputes relating to the JMS Contract.

10.      Venue is proper because IOM is located in Palm Beach County, Florida, the Pickle was designed and constructed to be operated in Palm Beach County, Florida.

11.      Each cause of action accrued in Palm Beach County, Florida as IOM incurred damages in Palm Beach County, Florida.

## GENERAL ALLEGATIONS

12.      JMS employs licensed naval architects and marine engineers that provide maritime design and engineering services.

13.      JMS is certified by ISO 9001 and reportedly adheres to its internationally recognized quality standards.

2

14.     JMS was formed in 2013 and provides design and engineering services for complete complex vessel design package development; from concept design to detail, structure, and systems design, and complete shipyard bid package development, along with contract administration services.

15.     JMS represented to IOM that it has designed and engineered numerous tank barge vessels with similar characteristics to the Pickle.

16.     As a licensed naval architect and marine engineering firm, JMS is required to furnish its professional naval design, architectural, engineering and owner representative services consistent with accepted industry standards and practices.

17.     JMS knew that IOM intended to operate the Pickle in furtherance of its marine petroleum business to distribute and sell fuel to vessels throughout the south Florida intracoastal waterways, and that any delay in its delivery and/or operation would result in a loss of business revenue.

18.     In entering into the JMS Contract with IOM, JMS accepted the relationship of trust and confidence to exercise its professional skill and judgment in furthering IOM's interests in the design and construction of the Pickle and to identify any concerns, along with any potential errors or omissions in the Contract Design Package which may affect the performance of the Pickle.

19.     The JMS Contract provided for JMS to furnish professional design and engineering services in phases, including a Concept Design Phase, Contract Design Phase, Bidding Support Phase and Owner's Representative Phase.

20.     Pursuant to the JMS Contract, during the Concept Design Phase, JMS was required to determine the principal characteristics and major outfitting of the Pickle design, including its propulsion system requirements and available options.

21.     Pursuant to the JMS Contract, during the Contract Design Phase, JMS was required to develop a Contract Design Package, including final detail structural drawings, outfitting details, stability calculations, Master Equipment List and Technical Specifications.

22.     JMS' design of the Pickle ultimately included a displacement hull vessel propelled by two (2) CXO300 diesel outboard engines manufactured by Cox (the "Engines").

23.     On June 18, 2020, IOM contracted with St John's Ship Building, Inc. ("SJSB") for the construction of the Pickle in accordance with JMS' Contract Design Package  (the "SJSB Contract").  A copy of the SJSB Contract is attached as Exhibit "B."

24.     The SJSB Contract provided that the Pickle be constructed for final acceptance within 180 days (on or before December 15, 2020).

25.     Pursuant to the JMS Contract, during the Owner's Representative Phase, JMS was required to, among other things: (a) provide owner's representative services and onsight shipbuilder oversight support through inspections during construction as technical representatives of IOM; (b) perform ship checks to ensure full compliance with the contract documents during construction and ensure that any proposed design and/or schedule changes were in the best interest of IOM; (c) provide status reports and recommendations after each site visit; (d) ensure that SJSB complied with all instructions and directives included in the SJSB Contract; (e) ensure that SJSB's work and the Pickle met the performance requirements of the Technical Specification and design drawings; (f) perform or witness sea trials; and, (g) advise IOM that if the Pickle, as built, was not fit for its intended purpose.

26.     The Pickle was not presented for acceptance until on or about February 21, 2022 (613 days after execution of the SJSB Contract), a delay of approximately 433 days.

27.     Shortly after IOM took possession of the Pickle, it discovered significant problems

4

*INTREPID OCEANS MARINE, LLC., V. JMS NAVAL ARCHITECTS, LLC.*

with the performance of the propulsion system designed by JMS, including the Engines, which generated error codes and appeared to only operate in "Limp Mode" at times.

28.    Between February and May of 2022, authorized Cox technicians attempted to diagnose and remediate the propulsion problems with the Engines on numerous occasions, but were unsuccessful.  In fact, even the replacement of one of the Engines failed to correct or improve the significant performance issues which rendered IOM unable to properly and safely operate the Pickle for its intended purpose.

29.    In fact, the Pickle experienced complete Engine and propulsion failures on multiple occasions, including an engine overload and failure that caused the Pickle to drift sideways through a drawbridge, endangering the safety of the crew and other vessels

30.    As a result of the operational problems along with performance and safety concerns, IOM was unable to operate the Pickle for its intended use, to sell marine petroleum, and IOM was forced to mostly leave the Pickle dockside at the Seminole Marina in Palm Beach Gardens, Florida between the end of February of 2022 and August of 2022.

31.    IOM planned to showcase the unique Pickle at the 2022 Palm Beach International Boat Show in Palm Beach County, Florida in March of 2022, but was unable to operate the Pickle safely and IOM missed a significant opportunity to promote its marine fueling services and advertise its business.

32.    In May of 2022, authorized Cox technicians advised IOM that the propulsion system and Engines specified by JMS would never work properly on the Pickle application.

33.    As a result of JMS' errors and omissions in its design and engineering of the Pickle, it was constructed with a defective propulsion system, including the Engines, rendering the Pickle unfit for its intended use.

34.      Without a fully operational propulsion system, IOM mitigated its damages by having a tug boat constructed (the "Morty") to tow the Pickle so that it could transact its business as intended.  The cost to construct the Morty was approximately $385,000.00 and it was completed in August 2022.  With the Morty, IOM is now able to use the Pickle to sell marine petroleum in the Palm Beach County intracoastal waterways.

35.      Following the construction and operation of the Morty to propel the Pickle, the Engines were ultimately removed.

36.      JMS' naval design, engineering and owner's representative errors and omissions have resulted in substantial damages to IOM, including among other things, increased costs to operate the Pickle; damage to the pickle; the cost of constructing and insuring the Morty; the significant loss of business revenue due to the delay in constructing the Pickle and delay in IOM's ability to operate the Pickle between the time that it took possession of the vessel and the time that the Morty was built so that IOM could safely operate its business; the costs incurred to employ a crew and insure the Pickle while it was inoperable; the costs associated with the purchase and installation of the Engines; loss of advertising and promotion of IOM's marine petroleum business at the boat show and other promotional events; and the loss of revenue relating to the removal of the Engines.

37.      Plaintiff retained the undersigned to act as its attorneys in connection with this litigation and have agreed to pay its attorneys a reasonable fee.

38.      All prerequisites to filing and maintaining this lawsuit have been satisfied, waived, or have otherwise occurred.

## <u>COUNT I – BREACH OF CONTRACT</u>

39.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 38 as if set

forth fully herein.

40.     IOM and JMS entered into the valid JMS Contract pursuant to which JMS agreed to furnish professional naval design, engineering and owner's representative services for the design and construction of the Pickle Project.

41.     JMS breached the JMS Contract in, among other things:

a.     Failing to properly  determine the principal characteristics and major outfitting of the Pickle design, including sufficient propulsion system requirements and available options.

b.     Developing a Contract Design Package, including final detail structural drawings, outfitting details, stability calculations, Master Equipment List and Technical Specifications with design and engineering errors and omissions.

c.     Including in its design and engineering of the Pickle a displacement hull vessel propelled by the Engines which, given the characteristics of the Pickle, JMS knew or should have known would not provide for the proper propulsion of the Pickle.

d.     Failing to properly provide owner's representative services and onsight shipbuilder oversight support through inspections during construction as technical representatives of IOM.

e.     Failing to properly perform ship checks to ensure SJSB's full compliance with the JMS Contract and SJSB Contract during construction of the Pickle and failing to ensure that schedule changes, including the significant delay in the completion of the Pickle were in the best interest of IOM.

f.     Failing to provide IOM with status reports and recommendations after each site visit during the owner's representative phase of the JMS Contract

*INTREPID OCEANS MARINE, LLC., V. JMS NAVAL ARCHITECTS, LLC.*

g.      Failing to ensure that SJSB complied with all instructions and directives in the SJSB Contract, including that the Pickle was properly constructed for final acceptance within 180 days.

h.      Failing to ensure that the Pickle met the performance requirements of the Technical Specification and design drawings.

i.      Failing to perform or witness sea trials.

j.      Failing to advise IOM that the Pickle, as built, was not fit for its intended purpose.

k.      Preparing technical specifications relating to the engines that were devoid of sufficient detail and/or not supported by requisite calculations.

l.      Failing to properly furnish technical specification for the Engine propellers.

m.      Failing to perform the requisite calculations in the development and specification of the propulsion system and Engines of the Pickle.

42.      JMS' breaches of the JMS Contract resulted in design and engineering defects in the Pickle, which caused substantial damages to IOM, including among other things, increased costs to operate the Pickle; damage to the pickle; the cost of constructing and insuring the Morty; the significant loss of business revenue due to the delay in constructing the Pickle and delay in IOM's ability to operate the Pickle between the time that it took possession of the vessel and the time that the Morty was built so that IOM could safely operate its business; the costs incurred to employ a crew and insure the Pickle while it was inoperable; the costs associated with the purchase and installation of the Engines; loss of advertising and promotion of IOM's marine petroleum business at the boat show and other promotional events; and the loss of revenue relating to the removal of the Engines.

WHEREFORE, Plaintiff seeks judgment against JMS for breach of contract awarding such

8

damages as may be proven together with pre and post judgment interest, costs, and for such further relief this Court deems just and proper.

## COUNT II – PROFESSIONAL NEGLIGENCE

43.     IOM repeat and reallege paragraphs 1 through 38 as if set forth fully herein.

44.     JMS is a professionally licensed naval architectural and marine engineering firm, and was the design professional responsible for the design and engineering of the Pickle, and for furnishing owner's representative services.

45.     IOM employed and was in privity with JMS for its professional naval architectural and marine engineering services for the design and construction of the Pickle.

46.      JMS was paid to determine the principal characteristics and major outfitting of the Pickle design, including propulsion system requirements and available options; develop a Contract Design Package, including final detail structural drawings, outfitting details, stability calculations, Master Equipment List and Technical Specifications; design and engineer the Pickle with an appropriate propulsion system, including engines, that would provide for the safe operation of the Pickle for its intended purpose.

47.     Errors and omissions in JMS' design and engineering of the Pickle included the design and specification of a displacement hull vessel propelled by the Engines which would never operate properly for application on the Pickle's propulsion system and ultimately had to be removed and replaced with propulsion by the Morty.

48.     JMS, as the naval architect and marine engineer for the Project and the Pickle, owed a duty of care to IOM to perform its professional services in accordance with the accepted standards and practices of the industry and to exercise a reasonable degree of skill and care to ensure that the Pickle was designed and constructed with an appropriate propulsion system,

including engines, that would provide for the safe operation of the Pickle for its intended purpose.

49.     JMS was careless, negligent, and breached its aforementioned duty of care in designing, engineering, supervising, inspecting, approving and accepting the Pickle with design and engineering defects and deficiencies, and by including in its design and engineering a displacement hull vessel propelled by the Engines which, given the characteristics of the Pickle, JMS knew or should have known would not provide for the proper propulsion of the Pickle; failing to properly provide owner's representative services; failing to ensure that the Pickle met the performance requirements of the Technical Specification and design drawings; furnishing technical specifications relating to the Engines that were devoid of sufficient detail and/or not supported by requisite calculations; failing to properly furnish technical specification for the Engine propellers; and failing to perform requisite calculations in the development and specification of the propulsion system and Engines of the Pickle.

50.     As a direct and proximate result of JMS' negligence, errors and omissions, caused substantial damages to IOM, including among other things, increased costs to operate the Pickle; damage to the pickle; the cost of constructing and insuring the Morty; the significant loss of business revenue due to the delay in constructing the Pickle and delay in IOM's ability to operate the Pickle between the time that it took possession of the vessel and the time that the Morty was built so that IOM could safely operate its business; the costs incurred to employ a crew and insure the Pickle while it was inoperable; the costs associated with the purchase and installation of the Engines; loss of advertising and promotion of IOM's marine petroleum business at the boat show and other promotional events; and the loss of revenue relating to the removal of the Engines.

WHEREFORE, Plaintiff demands judgment against JMS for professional negligence for said damages, as well as pre and post judgment interest, costs, and such other relief as the Court

*INTREPID OCEANS MARINE, LLC., V. JMS NAVAL ARCHITECTS, LLC.*

deems just and proper.

## <u>COUNT III BREACH OF FLORIDA STATUTE 627.4137</u>

51.    IOM repeat and reallege paragraphs 1 through 38 as if set forth fully herein.

52.    On June 27, 2022, Plaintiff, through its counsel, made a demand upon JMS to provide its insurance coverage information in accordance with Florida Statute 627.4137, a copy of which is attached as Exhibit "C."

53.    IOM was entitled to the requested information prior to filing suit.

54.    Florida Statute 627.4137 provides in pertinent part:

> In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers. The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

55.    Counsel for IOM made subsequent demands in accordance with Florida Statute 627.4137 upon counsel for JMS, including on August 16, 2022 and November 4, 2022.

56.    JMS and its counsel knowingly and intentionally refused to comply with IOM's demands for insurance information and as a result, IOM was forced to bring this Count.

57.    IOM has been damaged by JMS' violation of Florida Statute 627.4137, including by incurring attorney's fees and costs in pursuing this information, and unnecessary litigation costs.

WHEREFORE, Plaintiff demands judgment against JMS for breach of Florida Statute 627.4137, for the requested insurance information and consequential damages, attorney's fees and costs as a sanction against Defendant for knowingly and intentionally refusing to comply with the Statute, and such other relief as the Court deems just and proper.

11

*INTREPID OCEANS MARINE, LLC., V. JMS NAVAL ARCHITECTS, LLC.*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 8, 2022.

> CONRAD & SCHERER, LLP
> *Counsel for Plaintiff*
> 633 South Federal Highway, Ste. 800
> Fort Lauderdale, FL  33301
> Tel:(954) 847-3328 Fax:(954) 463-9244
> Email:     jsposato@conradscherer.com
> E-service: eservice@conradscherer.com
>
> By: */s/ James Sposato*
> James Sposato
> Florida Bar No.:  644171

# EXHIBIT

# A



JMS Naval Architects & Salvage Engineers
70 Essex Street
Mystic, CT 06355 USA
860.536.0009 · 860.536.9117 FAX
www.jmsnet.com · jms@jmsnet.com

27 March 2019

Jasen J. Butler
Intrepid Oceans Marine
PO Box 1750
Jupiter, FL 33468-1750
Mbl (561) 596-3748

**SUBJECT: Proposal to Design a 10,000 Gallon Double Hull Tank Barge**

Mr. Butler,

JMS Naval Architects is pleased to offer the following proposal (Proposal) to design a 10,000 gallon double hull tank barge for Intrepid Oceans Marine (Client).

**Approximate principal characteristics:**

Cargo capacity: 10,000 gallons
Length overall:  approx. 50'

Beam:              TBD
Depth:              TBD
Full Load Draft: 6'

**Other desired design characteristics:**
- Self-propelled; preferably dual, diesel outboard motors
- Propulsion control system for increased maneuverability; preferably HelmMaster system
- Cargo: #2 diesel
- Other tankage: 250-500 gallons capacity for black water and/or other pump-off liquids
- Raked bow and stern
- Spuds: 1 bow, 1 stern
- Wrap-around fenders
- Crew: 1 captain/tankerman
- Area of operation: Port of Palm Beach, FL; inside Intracoastal Waterway
- USCG, state, and local requirements, as applicable, To Be Determined during Concept Phase
- Designed to ABS rules
- Barge will be classed or load line: TBD (not required if length is under 79')
- Other outfitting and systems: TBD

## CONCEPT DESIGN PHASE:

**Project Kick-Off Meeting** - Working closely with the Client, JMS will review all of the desired barge design requirements, regulations, and priorities, and from them, determine the principal characteristics and major outfitting of the barge design, in order to select the most suitable concept to meet the Client's needs. JMS will consider ease and cost-effectiveness of construction, delivery, operation, short and long-term maintenance, and resale marketability of the barge.

These communications will begin with a project kick-off meeting between JMS and the Client. Project personnel roles and points of contact will be established at this meeting in order to keep follow-on communications and consensus between teams clear, flowing smoothly, and most efficiently. The meeting will be held via teleconference but JMS can accommodate the client's location if desired.

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*
EXHIBIT "A"

Based on the outcome of the Kick-Off Meeting, JMS will develop a concept design that meets, as closely as possible, the determined principal characteristics and major outfitting of the barge design. Tasks will include:

- Determine any and all systems and other equipment needed onboard in addition to those described in this proposal.
- Evaluate the desired barge size, arrangement of cargo and other compartments, propulsion system requirements and available options, tankage, tow and mooring equipment requirements (including spud system), and/or any other equipment, systems, and outfitting.
- Develop a weight estimate of the barge.

Deliverables will include:

- General Arrangement Concept Drawing
- Weight Estimate
- Master Equipment List (preliminary)

JMS will present a concept design to the Client at a Design Review Meeting. It is assumed that the review meeting will be held via teleconference but JMS can accommodate the client's location if desired.

***Concept Design Phase Estimated Cost: $7,500***
***Estimated schedule to complete: 4 weeks***

## CONTRACT DESIGN PHASE:

Upon acceptance of the Concept Design, JMS will develop a Contract Design Package suitable for shipbuilders to provide a competitive cost for construction. The Package will include final detail structural drawings, outfitting details, stability calculations, Master Equipment List, and Technical Specification document. JMS will also function as liaison between the Client and regulatory bodies (e.g. ABS, USCG, local bodies) as they relate to the barge design. An ABS-level design package will be developed that, in general, includes the following drawings, calculations, and documents, as applicable.

Structural Design Deliverables:

- General arrangement
- Tank arrangements
- Transverse section(s)
- Scantling plan (deck and bottom)
- Bow and transom end details
- Equipment specification
- Trusses
- Watertight and non-tight bulkheads

- Stability calculations and hydrostatic curves
- Calculations and data for longitudinal strength analysis
- Technical Specification
- Master Equipment List
- Control House/Operators Station
- Black water tank & foundations
- Propulsion Fuel tank & foundations

***Structural Design Estimated Cost: $24,000***
***Estimated schedule to complete: 6-8 weeks***

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*
EXHIBIT "A"

Systems Design Deliverables:

- Electrical One-Line
- Cargo Piping Schematic
- Cargo Pumps and Piping
- Manholes, deck fittings, and vents
- Deck Plan/Hazardous Zone Diagram

- Propulsion Arrangement
- Propulsion Controls
- Propulsion Fuel
- Navigational Equipment
- Black water pumping system

***Systems Design Estimated Cost: $18,000***
***Estimated schedule to complete: 6 weeks***

## BIDDING SUPPORT PHASE (OPTIONAL):

JMS will, as the Client determines:

- Assist the Client with shipyard bid support services, such as assistance with developing the shipyard solicitation package.
- Assist the Client with determining suitable shipyards and availability.
- Providing technical evaluation of shipyard bids.
- Assisting the Client with review of the contract between the Client and the shipbuilder the Client selects.

***Bidding Support Estimated Cost: $2,000 - $4,000***
***Estimated schedule to complete: 2-4 weeks***

## OWNER'S REPRESENTATIVE PHASE (OPTIONAL):

JMS will provide owner's representative services and onsite shipbuilder oversight support on behalf of the Client. Ship checks will be performed by JMS at the shipyard to ensure full compliance with the contract during the barge construction evolution and that any proposed design and/or schedule changes are in the Client's best interests and do not impact the operational requirements, budget, or regulatory constraints. JMS will provide a brief status report with recommendations as applicable after each site visit. Reports may include meeting minutes, construction progress, performance related to schedule and milestones, new and outstanding action items, next steps, and comments and recommendations related to milestone payments and other payment requisition (deviations and change orders) approval.

JMS will review and ensure the shipyard follows a quality control and construction inspection plan and all instructions and directives included in the contract between the Client and the shipbuilder. JMS will ensure the barge is constructed in accordance with the contract, its milestones and schedules, that the shipbuilder's work meets the performance requirements of the Technical Specification and design drawings of the contract, and is performed in accordance with good shipbuilding practices.

JMS will, as the Client determines:

- Conduct inspections onsite the shipyard during construction as technical representatives of the Client.
- Function as liaison between the Client and regulatory bodies (e.g. ABS, USCG, local bodies) as they relate to the design, construction, equipment and systems testing, sea trials, and operation of the barge.
- Perform, or witness on behalf of the Client, the Deadweight Survey and/or Incline Test.
- Perform, or review on behalf of the Client, the final stability calculations and submit to ABS.

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*
EXHIBIT "A"

It is anticipated that six (6) onsite inspections during construction would be typical for this type of vessel. The actual level of effort for this phase will depend on the production schedule and progress of the selected shipyard.

**Owner's Representative Estimated Cost:**   **$8,000** *(if shipyard is located within 150 miles of JMS)*
                                             **$14,000** *(if shipyard is located as far as FL or GOM)*
**Estimated schedule to complete: TBD** *(dependent on shipyard schedule)*


## PAYMENT SCHEDULE:

Concept Design Phase
At award of Contract: 20%
At delivery of Concept Design documents to Client: 60%
At Client signature of Concept Design Acceptance: Balance Due

Contract Design Phase
At start of phase 20%
At delivery of complete Detail Design package to Client and Class 50%
At receipt from Class of statement of compliance 20%
At Client signature of Detail Design Acceptance: Balance Due

Bidding Support Phase
At start of phase: 20%
At Client signature of Bidding Support Acceptance: Balance Due

Owner's Representative Phase
At start of phase: 20%
Remaining invoicing will be monthly, based on Time & Materials, including labor and travel expenses.

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*
EXHIBIT "A"

## JMS TERMS, CONDITIONS, AND ASSUMPTIONS SPECIFIC TO THIS PROJECT:

The proposal and estimated costs above are based on the following terms, conditions, and assumptions:

- Drawings, weights, and other relevant information, such as equipment specifications are available to JMS and may be used for this project without restriction.
- Significant revisions to the arrangements after acceptance of the concept or contract design will incur additional cost.
- As-built drawings, tank sounding tables, and blocking plan are not included in the above cost estimates. JMS can develop these items for the client for an additional fee.
- If barge is to be classed or Load line, cost estimates above are subject to change
- JMS will obtain USCG approval of the Contract Level design only. The builder of the barge will be responsible for the builder's Production Design (working drawings and final detail design including, piping, drafting and lofting services).
- Not included in the cost estimates above are third party plan review fees.
- Travel expenses and outside services are not included in the above cost estimates.
- Progress invoices may be submitted on a monthly basis.
- This proposal and pricing is valid for 30 days unless otherwise agreed.
- All additional tasking will be invoiced based on JMS standard rates.

Please do not hesitate to contact me with any questions.

Sincerely,

RICHARD FERNANDES, VICE PRESIDENT

(860) 536-0009 Ext 2
RickF@JMSnet.com

Proud to be a Veteran-Owned Small Business since 1988

**Attachments:**

- JMS Standard Rates 2019
- JMS Standard Terms & Conditions of Service
- Intrepid Oceans Marine Terms and Conditions

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*
EXHIBIT "A"

# JMS STANDARD RATES
# 2019

## ENGINEERING AND NAVAL ARCHITECTURE:

| | |
|---|---|
| Principal Engineer | $180 / hour |
| Sr. Naval Architect / Sr. Marine Engineer / Sr. Ocean Engineer (Eng 1) | $175 / hour |
| Project Manager | $150 / hour |
| Naval Architect/Marine Engineer (Eng 2) | $130 / hour |
| Naval Architect/Marine Engineer (Eng 3) | $115 / hour |
| On-site Engineering / Consulting Services | 8 hour minimum |

*Progress invoices will typically be submitted monthly. Invoiced payments overdue more than 30 days from the invoice date are subject to an assessed surcharge of 2.0% per month on the unpaid balance. Rates are subject to change without notice. Services will be invoiced at the rate in effect at the time services are rendered.*

Naval Architecture · Salvage Engineering · Marine Engineering · Marine Surveying

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*

EXHIBIT "A"

## JMS STANDARD TERMS AND CONDITIONS OF SERVICE

1. <u>FEES FOR PROFESSIONAL SERVICES - FIXED FEE</u>. Where the scope of work can be clearly defined, JMS may charge for services on a fixed fee basis. However, delays due to environmental factors, shipyard logistics, or other reasons beyond JMS' control will be invoiced per our standard rates. Monthly billings for fixed fee work are based on the percent of work complete.

2. <u>FEES FOR PROFESSIONAL SERVICES - HOURLY</u>. Where the scope of work and level of effort is not specifically defined, fees for services are based on the time directly expended on the project, including travel time, by professional, technical and clerical personnel.

3. <u>REIMBURSABLE EXPENSES</u>. Expenses attributable to our professional services are invoiced at cost plus a standard G&A fee, including such items as long distance telephone charges, reproduction, non-routine postage and delivery, and costs for travel out of the Mystic, Connecticut area. Receipts for routine expenses are not included unless requested.

4. <u>SERVICES BY OTHERS</u>. When considered necessary, other technical firms or outside consultants, who assume professional responsibility in their areas of expertise, may be used and billed at cost plus a standard G&A fee.

5. <u>INVOICING AND PAYMENT</u>. Invoices will be submitted monthly for the prior month's services. Payment is due upon the invoice date and becomes delinquent thirty (30) days thereafter. In the event of non-payment, JMS may, without waiving any of the claims or rights against you, and without liability whatsoever to you, terminate performance. A late charge will be added to delinquent amounts at the rate of 2% for each thirty (30) days delinquency.

6. <u>SCHEDULE</u>. JMS will prepare drawings and specifications in a timely manner, but is not responsible for delays occasioned by factors beyond JMS' control, nor by factors which could not reasonably have been foreseen at the time this agreement was executed.  It is understood that a time extension will be granted to JMS for any and all delays beyond our control. This includes any work being done by other parties.

7. <u>TERMINATION</u>. Either party may terminate this agreement with seven (7) days' written notice to the other in the event of a substantial failure of performance by the other party through no fault of the terminating party. If this agreement is terminated, JMS shall be paid for services performed to the receipt of termination notice, including reimbursable expenses due.

8. <u>OWNERSHIP OF DOCUMENTS</u>. Drawings, specifications and other documents, including those in electronic form, prepared by JMS and its consultants are instruments of service for uses solely with respect to this project. JMS grants to owner a non-exclusive license to reproduce JMS's instruments of service solely for purposes of this specific project. Any termination of this Agreement prior to completion of the project shall terminate this license. Any changes to the instruments of service not made by JMS or its consultants shall be at owner's sole risk and without liability to JMS or its consultants. JMS accepts liability and responsibility only for instruments of service that can be verified as having been produced and released by JMS or its consultants as indicated hard copies by a hand-applied signature or in electronic copies by a verified digital signature. Drawing, specifications and other documents supplied in electronic form as editable or native format files are provided solely for convenience of the Owner as non-verifiable information and therefore will not be considered instruments of service. By accepting delivery of non-verifiable electronic files, the Owner acknowledges that information in the electronic files may be incorrect and/or in conflict with the contracted instruments of service.

9. <u>CONFIDENTIALITY/INTELLECTUAL PROPERTY</u>. Any information furnished to JMS whether oral, written or otherwise shall not be considered confidential or proprietary or have any restrictions on use unless explicitly agreed to by written agreement.

10. <u>WARRANTY AND LIMITATION OF LIABILITY</u>.  JMS will provide services under this agreement with the degree of skill and judgment normally exercised by recognized professional firms providing services of the same nature. No warranty, express or implied, is made or intended by our consulting services or by our furnishing oral or written reports or drawings. JMS specifically disclaims any express or implied guarantees or warrantees including warrantees of fitness for a particular purpose, any warrantees that may be alleged to arise as a result of usage, any warrantee of performance, or any warrantee of third party products or services. Any opinion of construction cost offered by JMS represents the judgment of a design professional and is supplied for general guidance. JMS does not guarantee the accuracy of its opinion as compared to actual contractor bids or actual cost.

11. <u>INDEMNITY</u>.  The Client of this Proposal shall indemnify and hold harmless JMS, its officers, agents, employees and affiliated or related entities, against any and all suits, actions, proceedings, claims, losses, liabilities, damages, costs and expenses, including but not limited to court costs, litigation expenses and reasonable attorney fees, that are alleged to have occurred in whole or in part as a result of or due to the negligence or fault of the Client, its employees, agents, consultants or representatives.  The obligation of the Client to indemnify JMS shall survive the termination or full performance of the Proposal.

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*

EXHIBIT "A"

## INTREPID OCEANS MARINE TERMS AND CONDITIONS

**TERMS AND CONDITIONS TO JMS NAVAL ARCHITECTS' PROPOSAL TO DESIGN A 10,000 GALLON DOUBLE HULL TANK BARGE ON BEHALF OF INTREPID OCEANS MARINE.**

These Terms and Conditions govern JMS Naval Architects' ("JMS") Proposal (the "Proposal") to design a double hull tank barge on behalf of Intrepid Oceans Marine. ("Client" or "IOM"), they are incorporated into the Proposal and these Terms and Conditions supersede any and all provisions in the Proposal that may be contrary or inconsistent herewith.

### TERMS AND CONDITIONS FOR JMS PROPOSAL

1. FEES FOR PROFESSIONAL SERVICES - ESTIMATED COST. The Proposal provides clearly defined scopes of work with charges for services related to specific Phases of work on a good faith estimated cost basis. In the event that there are additional costs for delays due to environmental factors, shipyard logistics, client requested changes of scope, or other reasons beyond JMS' control, JMS will consult with IOM about the delay and provide an estimate of its impact upon costs, before incurring the additional costs. The additional costs will be billed in accordance with JMS' standard rates.

2. FEES FOR PROFESSIONAL SERVICES - HOURLY. Where the scope of work and level of effort is not specifically defined, fees for services are based on the time directly expended on the project, including travel time, by professional, technical and clerical personnel.

3. REIMBURSABLE EXPENSES. Expenses attributable to our professional services are invoiced at cost plus a standard G&A fee, including such items as long distance telephone charges, reproduction, non-routine postage and delivery, and costs for travel out of the Mystic, Connecticut area. Estimates for routine expenses and G&A fees will be provided before incurring such expenses.

4. SERVICES BY OTHERS. JMS intends to perform all work outlined in the Proposal in-house. If JMS considers it necessary to employ other technical firms or outside consultants, it must obtain the written permission and consent of IOM.

5. INVOICING AND PAYMENT. JMS may submit invoices to IOM monthly for the prior month's services. However, IOMS' payment for the costs related to a particular Phase of work is due according to the Payment Schedule in the Proposal and becomes delinquent thirty (30) days thereafter. In the event of non-payment, JMS may, without waiving any of the claims or rights against IOM, terminate performance. A late charge will be added to delinquent amounts at the rate of 2% for each thirty (30) days delinquency.

6. SCHEDULE. The Proposal sets forth estimated schedules to complete each Phase of the design project. The Phases are to be completed consecutively without any lapse in time between JMS' completion of each Phase, except for IOM or shipyard design review periods, or waiting for information required from IOM, equipment vendors, or the shipyard. JMS shall give the project such priority as necessary to cause its services to be timely and properly performed. JMS will prepare design drawings, specifications and documents in a timely manner and in accordance with the schedules for each Phase and IOMS' project timeline. The time limits established by the Phase schedules and IOM project timeline shall not, except for reasonable cause, be exceeded. Reasonable cause must be stated in a written notice prior to incurring any delay or causing an extension of the time limits. The statement of reasonable cause must include the reason for the delay and a specific determination of the additional time required. However, JMS is not responsible for delays occasioned by factors beyond JMS' control, nor by factors which could not reasonably have been foreseen at the time the Proposal was executed.

7. CONFIDENTIALITY/ OWNERSHIP OF DOCUMENTS. Any information furnished by or on behalf of IOM to JMS whether oral, written or otherwise shall be considered confidential or proprietary, and shall not be transmitted to third-parties by JMS unless explicitly agreed to by written agreement, with exception made to transmitting necessary design information to equipment vendors. The drawings, plans, specifications and other documents, including those in electronic form, prepared by JMS are Instruments of Service it may use solely in connection with this project. All rights, title and interest, including, without limitation, manufacturing, development and exploitation rights in and to all plans, data, drawings, specifications, ideas, scripts, sketches, designs, concepts, reports, documentation and/or other work product (whether tangible or intangible) produced by JMS relating to its Proposal with IOM ("Instruments of Service") shall at all times be and remain vested in JMS.

If CADD technology or other similar design technology programs (the "Application Programs") are used by JMS in connection with this project, JMS shall retain all rights, title and interest in the Application Programs. However, at the completion of the project, JMS shall deliver to IOM the Instruments of Service and a disc containing portions of JMS' design database pertaining to the project, along with complete instructions on the definition of the Application Program layers that must be used in the assembly of the electronic drawing files.

Any changes to the Instruments of Service not made by JMS or its consultants shall be at IOMS' sole risk and without liability to JMS or its consultants. JMS accepts liability and responsibility only for Instruments of Service that can be verified as having been produced and released by JMS or on behalf of JMS.

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*

EXHIBIT "A"

8. TERMINATION. Either party may terminate this agreement with seven (7) days written notice to the other in the event of a substantial failure of performance by the other party through no fault of the terminating party.  If this agreement is terminated, JMS shall be paid for services performed to the receipt of termination notice, including reimbursable expenses due.

Upon any termination of the Proposal prior to completion of the project, JMS shall deliver all Instruments of Service with applicable hard-copy and electronic files to IOM, permitting IOM to authorize other similarly credentialed design professionals to reproduce, complete, make changes or additions to the Instruments of Service to complete the design of the Barge.

9. JMS INSURANCE. Prior to commencing the project, JMS shall provide IOM with certificates of insurance demonstrating that it maintains Professional Liability, Commercial General Liability and Worker's Compensation insurance policies and such policies shall be maintained during the course of the work performed under the Proposal and provide coverage relating to JMS' indemnity obligations.

10.    INDEMNITY.  JMS shall indemnify and hold harmless IOM, its officers, agents, employees and affiliated or related entities, against any and all suits, actions, proceedings, claims, losses, liabilities, damages, costs and expenses, including but not limited to court costs, litigation expenses and reasonable attorney fees, that are alleged to have occurred in whole or in part as a result of or due to the negligence or fault of JMS, its employees, agents, consultants or representatives.  The obligation of JMS to indemnify IOM shall survive the termination or full performance of the Proposal.

11.    WARRANTY & COMPLIANCE WITH LAW.  JMS will provide services under this Proposal with the degree of skill and judgment normally exercised by recognized professional firms providing services of the same nature.  JMS warrants the completeness and accuracy of its Instruments of Service and will obtain USCG approval of the Contract Level design only. Final detail design and production drawings are the responsibility of the builder.  JMS acknowledges that the initial operation of the subject Barge will be Port of Palm Beach, Florida and inside the Intracoastal Waterway and JMS warrants that JMS' design and Instruments of Service will comply with all applicable State, USCG, and local statutes, codes and regulations, which IOM will determine during the Concept Phase ("Regulations"). During the Owner's Representation Phase, JMS will, to the best of its ability, inform IOM, as soon as possible and in a timely manner, if the barge builder is not building the barge in compliance with the Instruments of Service and if the barge, as built, is not in compliance with all applicable Regulations or is not fit for the purpose it is intended. JMS specifically disclaims any express or implied guarantees or warrantees including warrantees of fitness for a particular purpose, any warrantees that may be alleged to arise as a result of usage, any warrantee of performance, or any warrantee of third party products or services.

12.    CLAIMS AND DISPUTE RESOLUTION. JMS and IOM consent to the jurisdiction of the State of Florida in the Fifteenth Judicial Circuit Court, Palm Beach County for the purposes of resolving disputes relating to the Proposal.

13.    REQUESTS FOR INFORMATION. JMS agrees to answer in a professional manner all Requests for Information ("RFI's") that are submitted by the barge builder and its team.  JMS agrees to make every effort necessary to maintain an average response time on RFI's of five (5) calendar days, from the date of the initial receipt of an RFI until that RFI is returned.


**APPROVED BY:**                                           **DATE:**


Jasen Butler        *Jasen Butler*                          3/29/2019
_____        _____


**APPROVED BY:**                                           **DATE:**


_____        _____

*This proposal contains confidential and privileged information.*
*Any unauthorized review, use, disclosure, or distribution, in whole or in part, is prohibited.*
EXHIBIT "A"

# EXHIBIT

# B

# VESSEL CONSTRUCTION CONTRACT

## 10,000 GALLON DOUBLE HULL TANK BARGE

THIS CONTRACT (the "Contract") is entered into as of this 18th day of June, 2020, between St. Johns Ship Building Inc., a Florida corporation ("SJSB" or "BUILDER"), having an address 560 Stokes Landing Road in Palatka, Florida 32177, and Intracoastal Marine Fueling, LLC., a Florida limited liability company ("IMF" or "OWNER"), having an address at 12502 150th Court North in Jupiter, Florida 33478 or its assigns.

### WITNESSETH:

### ARTICLE I - DESCRIPTION OF VESSEL

BUILDER, for and in consideration of the sum to be paid it by OWNER as hereinafter set forth agrees to build, equip, and construct at BUILDER'S yard in Palatka, Florida, free and clear from all liens, claims and encumbrances, a 10,000 gallon double hull tank barge (the "Vessel"), which shall be constructed strictly in accordance with the following documents (the "Contract Documents"), which have been concurrently identified and initialed by the parties hereto and made a part hereof as if fully set forth herein (the "Work")

1.  The Contract Design Package prepared by JMS Naval Architects ("JMS"), titled, 'TECHNICAL SPECIFICATION: 10,000 GALLON TANKSHIP, 53FT X 18FT'. All accompanying drawings, plans, structural design documents, and systems design documents ("Specifications") which are attached and made a part hereof as Exhibit A.
2.  BUILDER Prepared Plans: A list of the plans and drawing hereinafter collectively referred to as the "Drawings" is attached hereto and made a part hereof collectively as Exhibit B. This list of drawings is to be developed as a part of this Contract. The OWNER will provide the authorization to proceed when the drawings are finalized by BUILDER.
3.  Owners Equipment attached as Exhibit C.
4.  Payment Schedule attached as Exhibit D.
5.  Additional Work Authorization attached as Exhibit E.

**The Vessel shall be assigned BUILDER'S Hull No. 133**

Except for such OWNER-furnished equipment as listed in Exhibit C attached hereto and made a part hereof, BUILDER agrees to furnish all plant, labor, tools, equipment, supplies and materials necessary for the construction and delivery of the Vessel.

If any unforeseeable changes in the applicable classification society's rules or in the applicable rules of the Flag State Agencies are made subsequent to the execution of this Contract, whereby the cost of the Vessel is increased and/or the time required for completion is extended, OWNER

BUILDER Initials _BAZ_                                          OWNER Initials _JB_

EXHIBIT "B"

shall authorize and pay for, in accordance with the terms of this Contract, as a change under this Contract, such alterations, additional work items, outfit and/or equipment or additional time as may be required to meet the changes. OWNER shall have the right to direct BUILDER to perform such a change ("enforced change"), and BUILDER shall commence the performance of the change without regard as to whether an agreement has been reached as to any increase or decrease in the Contract price, delay in delivery, and effect on performance requirements attributable to the change.

In efforts to secure proper approvals from regulatory bodies for first-of-class design, the estimated schedule will be predicated on the return of plans along with approval as well as the subsequent draw payments. BUILDER will not be held liable for schedule delays due to regulatory processes.

If BUILDER and OWNER are unable to agree on the cost of any enforced change, BUILDER shall proceed with the work and shall initiate and maintain an item on its accounting records specifically for such change. Any delay in delivery caused by any enforced change shall extend the agreed delivery date to include the additional days attributable to the enforced change.

## ARTICLE II-PRICE AND PAYMENT

OWNER, in consideration of the true and faithful performance on the part of the BUILDER, agrees to pay to BUILDER the total sum of NINE HUNDRED EIGHTY NINE THOUSAND THREE HUNDRED FIFTY FOUR AND 24/00 USD ($989,354.24), plus labor and materials for any change orders or modifications as mutually agreed upon or pursuant to this contract (hereinafter called the "Contract Price") pursuant to the draw schedule attached.

Payment shall be divided into several progress payments as outlined in EXHIBIT D of this Contract. Upon BUILDER attaining such a milestone, notice shall be submitted to OWNER for concurrence and acceptance of said payment milestone. OWNER has no more than (5) days by which to verify, concur or contest said milestone. Failure to respond to said milestone notice shall be deemed constructively acceptable by OWNER. Upon concurrence, OWNER shall have no more than (5) business days to confirm payment to BUILDER by either wire transfer or certified check.

At delivery of the Vessel, and acceptance of the Vessel by Owner, OWNER or OWNER's assigns shall pay to BUILDER the full amount of the Contract price as adjusted, less any amounts previously paid. If, at delivery, there are any disputes as to the amount due BUILDER, such dispute shall be resolved as is otherwise provided for herein. Delivery documentation and Builder's Certificate shall not be turned over to OWNER until the full Contract price has been mutually agreed upon and the final payment has been submitted to the BUILDER.

## ARTICLE III-TIME AND CONDITIONS OF DELIVERY

BUILDER shall furnish OWNER on delivery and acceptance of the Vessel and upon payment in full for the vessel, a BUILDER's certificate together with whatever other documents may be

BUILDER Initials _BAZ_                                OWNER Initials _J B_

Page 2

EXHIBIT "B"

required by law or by any regulatory agency of the United States having jurisdiction in order for OWNER to document the Vessel in its name (or the name of any assignee of OWNER). Any expense in connection with the furnishing of such documents and with the documentation of the Vessel shall be paid by OWNER.

The Vessel shall be delivered by BUILDER and accepted at Builder's Facility Palatka Florida. Upon Acceptance and delivery at Palatka, BUILDER, for a separate price, shall assist Owner with transport the vessel to the Port of Palm Beach in Riviera Beach, Florida at a berth designated by Owner. OWNER to pay all port charges, pilotage fees, if any, and insurance costs. OWNER will accept risk of loss and assume ownership of the vessel at Palatka Florida and shall insure the vessel for its delivery voyage with BUILDER as additional insured. Acceptance by OWNER is conditioned upon receipt of a final certification from the governmental authorities responsible for inspecting the construction and completion of such vessels, including the United States Coast Guard's ("USCG") certifying that the Vessel has passed all required inspections applicable to the Vessel. OWNER shall execute a delivery and acceptance certificate at the time of delivery and acceptance of the Vessel. Construction of the Vessel shall be completed and presented to OWNER for final acceptance within One Hundred Eighty (180) days from BUILDER's execution of the Contract, unless the parties mutually agree in writing upon a variance in the completion date or the date is adjusted pursuant to force majeure, USCG or class inspection delays or vendor delays.

## ARTICLE IV-CHANGES IN PLANS AND SPECIFICATIONS

Other than any enforced changes as provided for in Article I, the right is reserved by OWNER to make any additions to the Specifications and the Drawings on giving due notice in writing to BUILDER, the amount of any such changes to be agreed upon by the duly designated representative of OWNER and BUILDER, and added to the total Contract price. If any such agreed change shall delay the completion of the work, such delays shall be added to the delivery date outlined above. A statement of the increased costs, and/or any additional construction time required to complete the agreed changes shall be submitted to OWNER by BUILDER, and shall be approved by an authorized representative of OWNER in writing before any such agreed change is made. The form of change order is attached hereto and made a part hereof as Exhibit E titled Additional Work Authorization. BUILDER shall not be required to commence performance of any agreed change until an agreement is reached with OWNER as to any increase in the Contract price and any additional time added to the delivery date allowed BUILDER due to such change. The Specifications have been prepared for and furnished by OWNER, and OWNER shall be responsible for them.

All labor expended for any changes will be charged at the rate of $75.00 USD per hour and the cost of any material changes will be charged at BUILDER's actual cost, plus agreed markup rate of 20%.

Page 3

BUILDER Initials _BAZ_                               OWNER Initials _JB_

EXHIBIT "B"

All changes in scope of work that are accompanied with a change in contract value will be assessed and invoiced in conjunction with the final draw payment in Exhibit D. This includes both credit change orders as well as those that increase contract value. However, purchase of additional equipment or components as part of a change order will be billed at the time of purchase of the equipment or components.

## ARTICLE V-INSPECTIONS BY OWNER'S REPRESENTATIVES AND GOVERNMENTAL AUTHORITIES

BUILDER will furnish reasonable space at its yard for the duly authorized representative(s) of OWNER, including JMS, along with governmental authorities responsible for inspecting the construction and completion of such vessels, including the USCG, who shall have reasonable access to the work of BUILDER on the Vessel. OWNER'S representative(s) may inspect all workmanship and materials and may reject any workmanship and materials which do not comply with this Contract and/or the Contract Documents, provided that any inspection or failure to inspect or failure to reject workmanship and materials by OWNER'S representative shall not prejudice the rights of the OWNER under the provisions of this Contract or constitute a waiver of any such rights. OWNER agrees that its representative will advise BUILDER in writing as soon as reasonably possible if said representative discovers any work which is not in accordance with the Contract Documents.

OWNER shall have the right at any time during business hours to inspect and test the Vessel and the progress being made in the construction thereof and further shall have the right to have any qualified person of its choosing make inspection and examination of the Vessel in various stages of construction. OWNER shall be responsible for notifying BUILDER in writing if there is any complaint as to the satisfactory accomplishment of the work in progress. When the Vessel's machinery, equipment and systems are installed, each item will be tested to prove its proper operations. When these tests are satisfactorily completed, the Vessel will undergo necessary dock and sea trials to prove all the Vessel's machinery, equipment and systems operate satisfactorily while the Vessel is underway. Upon completion of satisfactory sea trials, all remaining Contract work will be completed, and the entire Vessel will be inspected by BUILDER and OWNER and/or any other person or persons of their choosing. If there are any complaints as to the satisfactory completion of the Contract work, OWNER will notify BUILDER in writing, setting forth the nature and character of the complaint in sufficient detail to fully apprise BUILDER of same. BUILDER shall diligently proceed with resolving the complaint providing the same is required by the Contract. If there are any disputes regarding the complaint that cannot be resolved and settled by the parties, then such complaint or dispute shall be settled in accordance with mediation and if necessary, arbitration as provided for in this Contract. Owner to provide all known discrepancies and disputes in writing to the builder prior to Delivery and Acceptance at Palatka Florida.

BUILDER Initials _BAZ_                    OWNER Initials _JB_

Page 4

EXHIBIT "B"

BUILDER shall provide OWNER with advanced written notice of all inspections of the Vessel to be performed by governmental authorities responsible for inspecting the construction of such vessels, including the USCG. BUILDER shall provide OWNER with all written communications and documents that it receives from such governmental authorities relating to the Vessel. BUILDER shall cooperate with such governmental authorities in their inspections and in obtaining a final certification that the Vessel has passed all required inspections applicable to the Vessel. BUILDER shall be responsible for correcting and remediating all defects and deficiencies in the Vessel and its components reported by such governmental authorities.

Upon completion and delivery of the Vessel and payment in full therefore, the Vessel shall be accepted by OWNER as herein set forth in this Contract. BUILDER shall give OWNER written notice of the completion and tender of delivery of the Vessel, and OWNER shall, within ten (10) days after receipt of the written notice of completion, accept or reject said Vessel in accordance with provisions hereof. Failure on the part of OWNER to accept or reject the Vessel within ten (10) days after receipt of the written notice of delivery, shall constitute conclusive constructive acceptance and delivery of the Vessel in accordance with the provisions hereof. The vessel may be accepted notwithstanding any outstanding punch lists of minor items to be corrected by the BUILDER.

When BUILDER gives OWNER notice of completion and delivery, and in the event any complaint or dispute as to the condition of the Vessel cannot be resolved and settled by the parties, OWNER may post a bond or security for the disputed items and take acceptance of the vessel, and then such complaint or dispute shall be settled in accordance with the mediation and if necessary the arbitration provision of this Contract; provided, however, OWNER shall have given BUILDER adequate written notice of such dispute or complaint prior to the expiration of the twenty (20) day period, which OWNER has to accept or reject said Vessel after receiving written notice of delivery.

### ARTICLE VI-FORCE MAJEURE

All agreements of the BUILDER contained in this Contract respecting the stipulated state of delivery of the Vessel shall be subject to extension by reason of "Force Majeure," which term is hereby declared to include causes not reasonably foreseeable by BUILDER and beyond its reasonable control. The parties agree that such causes shall include but shall not be limited to the following: acts of God, declared National, State or local emergencies that stop or delay production, war, preparation for war, and/or the requirement, urgency or intervention of Naval or Military executives or other agencies of government; sabotage, vandalism and malicious mischief; delays caused by resolutions of any disputes under Articles XIV or XX; insurrection, landslides, floods, hurricanes, or threat of floods or hurricanes, named windstorms, earthquakes or inclement weather in excess of 24 hours; collisions, fires, non-delivery and/or late delivery of all OWNER-furnished material and equipment and delays of material or shortage of skilled labor which

BUILDER Initials _BAZ_          OWNER Initials _JB_

Page 5

BUILDER by reasonable precaution cannot avoid. Rain and other adverse weather conditions shall not be considered a "Force Majeure" event unless its occurrence requires a shutdown of a substantial portion of BUILDER'S operations prior to 12:00 noon on a regularly scheduled workday. Additionally, any inclement weather by which scheduled critical operations are unable to be performed within reason. For each day on which rain and other adverse weather conditions required a shut down as aforesaid, BUILDER shall be entitled to one workday's extension of the delivery date. Delays in receiving material, equipment or fuel or short deliveries thereof (except OWNER-furnished material), shall be considered a "Force Majeure" event only if BUILDER shows that such materials or supplies were timely ordered and that due diligence was exercised to obtain timely delivery thereof, and no other alternate source of supply was reasonable available.

Shortages of labor or skilled workmen may be considered a "Force Majeure" event only if BUILDER demonstrates that diligence had been used recruiting, hiring, and maintaining a sufficient work force and that BUILDER'S wage scale for each classification of employee, during the pending of this Contract, retains the same relationship as presently exists between BUILDER'S labor force and that of comparable yards in BUILDER'S area.

If the completion of the Vessel is delayed by "Force Majeure," the stipulated delivery date shall be extended by a period equal to the period of such delay. Any provision in this Contract to the contrary notwithstanding, BUILDER shall attempt to remedy the cause of any event of "Force Majeure" with all reasonable dispatch.

## ARTICLE VII-LIMTED WARRANTY

A.    BUILDER warrants that:

    1.    All work will be done in a good and workmanlike manner according to the standard commercial shipbuilding practice for Vessels of this type.

    2.    All labor and installations made will meet the requirements and standards described in the Contract Documents; all materials and equipment used by the BUILDER will be of the quality set forth in the Contract Documents, excluding items furnished by the OWNER; and should there occur or exist any weakness, deficiency, or other than inherent vibration due to hull characteristics any failure, and breaking down or deterioration caused by poor workmanship or BUILDER-furnished materials or any failure of the Vessel due to the not being constructed in accordance with the Contract Documents (herein called a "Guarantee Deficiency" or "Guarantee Deficiencies"), then such Guarantee Deficiency shall be made good, at the BUILDER'S expense, to the requirements of the Contract Documents and this Contract; provided, however, the BUILDER shall not be responsible for the cost of correcting any such Guarantee Deficiency due to the negligence or other

BUILDER Initials _BAZ_          OWNER Initials _JB_

EXHIBIT "B"

improper act of the OWNER or any OWNER operator of the Vessel or of any other person not engaged by BUILDER.

BUILDER'S warranty shall extend only to a guarantee deficiency which is reported in writing to BUILDER **within three hundred and sixty five (365) days** after delivery of the Vessel. For BUILDER-furnished material, the warranty period shall be **three hundred and sixty five (365) days** from the date of delivery of the Vessel or the manufacturer's warranty period, whichever is less. BUILDER agrees to seek to obtain from each of the suppliers or vendors the warranty period available. In the event OWNER notifies BUILDER of any Guarantee Deficiency, BUILDER will make repairs and/or replacement of the Guarantee Deficiency, at its option, and notify OWNER in writing of said repair, at BUILDER'S yard at 560 Stokes Landing Road, Palatka, Florida without expenses to BUILDER for transporting the Vessel or any component thereof to and from that yard; provided that if it is not practical to have the Vessel proceed to such yard, OWNER may, with the prior written consent of BUILDER, have such repairs and/or replacement made elsewhere, and in such event, BUILDER shall reimburse OWNER for the cost of such repairs providing costs of effecting the necessary repairs does not exceed **$75.00 USD** per man hour extended and the cost for any material required does not exceed actual cost plus an agreed upon markup rate not to exceed 15%.

The BUILDER shall not be responsible for any paint failures or defective painting of the Vessel manifesting itself after delivery of the Vessel to OWNER provided that BUILDER has properly applied the paint and has obtained from the paint manufacturer certification to this effect and manufacturer's warranty.

This Limited Warranty shall not preclude OWNER from seeking recourse against BUILDER for any defect or deficiency in the subject Vessel that does not conform to the Contract Documents, and is discovered subsequent to the expiration of the Limited Warranty period.

B.    Restrictions Applicable to Warranties

These limited warranties do not cover:
1.    Components or equipment covered by vendor or manufacturer's warranties
2.    Problems caused by improper maintenance, storage, cradling or blocking, normal wear and tear, misuse, neglect, accident, corrosion, electrolysis or improper operation, including overloading and excessive speed for sea conditions. Speeds, fuel consumption and other performance characteristics because they are estimated, contingent on many variables such as sea condition, weight of OWNER'S gear, options, additional equipment, and bottom conditions are not guaranteed.
3.    Alterations made by OWNER affecting structural components.

BUILDER Initials _BAZ_                    OWNER Initials _JB_

EXHIBIT "B"

4.      Problems caused by installation of components by outside Contractors engaged by OWNER.

OWNER ACKNOWLEDGES THAT NO OTHER REPRESENTATIONS WERE MADE TO IT WITH RESPECT TO THE QUALITY AND FUNCTION OF THE VESSEL. ANY ORAL STATEMENT OR PRINTED MATERIAL ADVERTISING THE VESSEL WHICH STATES ANY PERFORMANCE CHARACTERISTICS OF THE VESSEL OR ANY OF ITS COMPONENTS SHALL BE CONSIDERED AND CONSTRUED AS AN ESTIMATED DESCRIPTION ONLY AND SHALL NOT BE RELIED UPON AS AN EXPRESS WARRANTY OR AS THE BASIS OF THE BARGAIN FOR THE VESSEL OR ANY OF ITS COMPONENTS. THIS WARRANTY GIVES OWNER SPECIFIC LEGAL RIGHTS, AND OWNER MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

### ARTICLE VIII-INSURANCE

BUILDER, at its own expense, shall, from the time the first materials destined for inclusion as part of the Vessel become at risk in BUILDER'S shipyard and until the Vessel has been delivered to and accepted by OWNER, keep the Vessel and all materials (including OWNER-furnished materials),outfit, equipment, and appliances to be installed on or in the Vessel, fully insured under full form Marine Builder's Risk policies. The amount of insurance, the terms of the policies, the insurance companies and the underwriters shall at all times be reasonably satisfactory to OWNER, provided the amount shall be at least equal to the value of the completed part of the work plus the value of materials and equipment received by BUILDER for use or incorporation in the Vessel. All such policies relating to the Vessel shall name OWNER as an additional insured and shall provide coverage for the indemnification requirements of BUILDER in this Contract.

All policies shall be taken out in the name of BUILDER and OWNER, and all losses under such policies shall be payable to BUILDER, OWNER and Lender as their respective interests may appear. In the event of damage or loss other than actual or constructive total loss, the proceeds received from the insurance policy shall be payable to and escrowed by Lender and BUILDER to replace or repair such damage or loss compensated for replacement and repair of such damage or replacement in accordance with a milestone schedule agreed to by and between BUILDER and OWNER. In the event of damage or loss constituting the actual or constructive total loss, BUILDER shall not be required to reconstruct the Vessel, and the proceeds of the insurance policies and any salvage or scrap value of the Vessel shall be dispersed to BUILDER and OWNER in such manner the OWNER shall be repaid for all payments made hereunder for such Vessel and for all OWNER-furnished materials, and the remainder of such proceeds shall be paid to BUILDER.

Page 8

BUILDER Initials _BAZ_                    OWNER Initials _J B_

B.  BUILDER shall also maintain, at its expense, during the life of this Contract, Worker's Compensation and United States Longshoremen's and Harbor Workers' coverage in the amount of $1,000,000.00. Employer's Liability Insurance in the amount of at least $1,000,000.00 and Commercial General Liability Insurance against property damage, death and personal injury in an amount of no less than $1,000,000.00 for any one occurrence and subject to a total limit of $1,000,000 for all damages during the policy period. Such CGL insurance shall include coverage for premises, operations independent contractors, personal injury and death, products completed operations, and contract liability to protect builder from claims arising out of liability assumed by Builder in connection with this contract.

## ARTICLE IX-INDEMNITY

BUILDER shall indemnify, defend and hold harmless OWNER, JMS, their officers, directors, shareholders partners, employees, and agents (collectively, the "Owner s Indemnified Parties") from and against any claim, action loss, damage, cost and expenses (including, without limitation reasonable attorneys' fees and disbursements) damage to property, injury or death caused by, arising out of or in connection with the BUILDER's (including its consultants, subcontractors, laborers, suppliers or materialmen, at any tier, and their respective agents and employees) performance of the Work and its care, custody and control of the subject Vessel prior to delivery of the Vessel, except to the extent wholly or partially caused by the negligence or wrongful acts of any of the Owner's Indemnified Parties. BUILDER shall defend or cause to be defended at no expense to any of the Owner's Indemnified Parties any claim, action or proceeding brought against any of the Owner's Indemnified Parties arising out of the foregoing; and BUILDER shall hold the Owner Indemnified Parties harmless from any judgment, loss, damage or settlement on account thereof. The Owner's Indemnified Parties shall promptly notify the BUILDER of any claim that may be asserted for which indemnity might be sought.

## ARTICLE X-TAXES & PERMIT FEES

Any sales, use or similar tax on the sale or use of the Vessel which may be levied upon or imposed in connection with the construction or delivery of the Vessel hereunder shall be for the account of OWNER. BUILDER agrees that it will not pay any such tax or concede any liability for same without prior notice to OWNER except in the ordinary course of business. BUILDER acknowledges and accepts exclusive liability for the payment of any permit fees, transportation taxes, personal property taxes (only to the extent that liability therefore attaches prior to the delivery and acceptance of the Vessel by OWNER), payroll taxes, unemployment taxes or contributions, taxes based on income or other taxes or contributions now or hereafter imposed by any government or taxing authority having jurisdiction in the premises, and which are measured or computed in accordance with salaries or other compensation or income and which shall be due and payable by virtue of the performance of BUILDER'S obligations hereunder. Should OWNER

BUILDER Initials _BHZ_                    OWNER Initials _J B_

Page 9

claim exemption from Florida sales tax, a signed certification stating the basis for this exemption shall be provided to the BUILDER prior to start of work.

## ARTICLE XI-TITLE

Title in and to the Vessel to be constructed pursuant to the Contract Documents (but not risk of loss) shall be vested in OWNER or OWNER'S assigns. The work shall be deemed delivered to, and title to the work shall be vested in OWNER or OWNER'S assigns as when performed; and in addition to the foregoing, title to the completed Vessel shall be vested in OWNER or OWNER'S assigns upon completion thereof; the materials shall be deemed delivered to OWNER or OWNER'S assigns and title to the materials shall vest in OWNER or OWNER'S assigns as and when delivered to BUILDER and the components shall be deemed to have been delivered to OWNER or OWNER'S assigns and title to all components shall vest in OWNER or OWNER'S assigns upon commencement of fabrication of the components. BUILDER shall have the obligation to cause the Vessel, the materials and the components referred to above to be marked as follows:

BUILDER shall affix a plaque to the Vessel, approved by OWNER, showing the name of BUILDER and OWNER, i.e., St. Johns Ship Building Inc., BUILDER.

BUILDER shall mark or stamp on all materials for the Vessel the name of the OWNER or OWNER'S assigns and the hull number of the Vessel, upon delivery of such materials to BUILDER, or alternatively, maintain records which will identify with certainty all such materials for the Vessel with the name of OWNER or OWNER'S assigns and the hull number of the Vessel for which the materials will be used.

BUILDER shall mark or stamp on all components for the Vessel, the name of the OWNER or OWNER'S assigns and the hull number of the Vessel for which the components will be used upon commencement of the fabrication thereof, or alternatively, maintain records which will identify with certainty all such components for the Vessel with the name of the purchaser and the hull number of the Vessel for which the components will be used.

BUILDER shall have the sole risk of loss of the Vessel until the same is delivered to OWNER or OWNER'S assigns under the provisions of this Agreement following the completion and acceptance of said Vessel by OWNER or OWNER'S assigns.

## ARTICLE XII-DEFAULT

1. Default. If BUILDER:

    A.    Shall breach any provision hereof, and if such breach shall not be corrected within ten (10) days after written notice thereof from OWNER to BUILDER (or, if such

Page 10

BUILDER Initials _BAZ_                    OWNER Initials _JB_

breach is not correctable within ten (10) days, then within a reasonable time after such notice),

2. <u>Default</u>. If OWNER:
   B.   Shall breach any payment provision hereof, and if such breach shall not be corrected within (10) days after written thereof from BUILDER to OWNER. Failure to pay a draw payment after proper notice of draw payment due shall be a material breach of this agreement. Builder may at its option, suspend the build, and demand reasonable assurances that the outstanding draw and other draws will be paid and may require a standby Bank Letter of Credit or Bond to continue the build.

The failure of either party to exercise any rights conferred upon it under any provision of this Contract with respect to any breach or default by the other party shall not constitute a waiver of its rights under any other provision of this Contract with respect to such breach or default, or a waiver of its rights under the same or any other provision of this Contract with respect to any other breach or default. Provided, however, neither party shall have the right to claim a breach by the other nor terminate the other's right to proceed with the performance hereof, in so long as the party whose rights are sought to be terminated continues to perform its obligations hereunder. The parties hereby waive all incidental, consequential and loss of use loss of profits damages.

## ARTICLE XIII-NOTICES
Copies of notices required by this Contract to be given by OWNER to BUILDER or to be given to OWNER by BUILDER shall be in writing and will be delivered in person, by facsimile, or by registered mail to BUILDER or OWNER, or the designated representative of either, as the case may be. Notices to BUILDER shall be addressed to Steven Ganoe, President, St. Johns Ship Building, Inc., 560 Stokes Landing Road, Palatka, FL 32177, (386)328-6054. Notices to the OWNER shall be addressed to Jason Butler, Manager, Intracoastal Marine Fueling, LLC., at 12502 150th Court North in Jupiter, Florida 33478, (561) 596-3748. Any such address may be changed and any other person may be designated to act for either party upon written notice of such designation accomplished in accordance with the provisions of this paragraph.

## ARTICLE XV-RIGHTS TO DOCUMENTS & DRAWINGS
The Specifications, Drawings, Plans and all Contract Documents shall be the property of the OWNER. BUILDER agrees that all of the Specifications, Drawings, Plans and Contract Documents relating to the construction of the subject Vessel shall be stamped "Confidential" and may not be used or disclosed to a third-party by BUILDER for any other purpose, except the building of this Vessel, without the prior written consent of OWNER. Upon acceptance of the Vessel by OWNER or termination of this Contract, BUILDER shall deliver to OWNER all documents and materials

Page 11

BUILDER Initials _BAZ_                    OWNER Initials _JB_

marked Confidential. The obligations of the BUILDER and OWNER contained in this paragraph shall survive the delivery of the Vessel.

## ARTICLE XVI-CONSTRUCTION

The headings of the section have been inserted as a convenience for reference only, and are not to be considered in any construction or interpretation of this Contract.

## ARTICLE XVII-VENUE, JURISDICTION AND CHOICE OF LAW

THE PARTIES AGREE THAT THE SOLE VENUE AND JURISDICTION FOR RESOLVING ANY DISPUTES AND ENFORCING ANY PROVISION IN THIS CONTRACT IS IN JACKSONVILLE FLORIDA AS PROVIDED FOR IN THIS CONTRACT.

IF OWNER AND BUILDER ARE UNABLE TO AGREE ON THE RESOLUTION OF A DISPUTE ARISING OUT OF THIS CONTRACT, THE PARTIES AGREE TO ENGAGE A MUTUALLY AGREEABLE INDEPENDENT MEDIATOR AND TO PARTICIPATE IN MEDIATION, WITHIN THIRTY (30) DAYS WRITTEN NOTICE BY EITHER PARTY, IN AN ATTEMPT TO AMICABLE RESOLVE THE DISPUTE.

IN THE EVENT THAT MEDIATION IS UNSUCCESSFUL, THE PARTIES AGREE TO SUBMIT THE DISPUTE TO AN IMPARTIAL CONSTRUCTION ARBITRATOR OF THE AMERICAN ARBITRATION ASSOCIATION TO MAKE A FINAL, BINDING AND ENFORCEABLE DECISION RELATING TO THE DISPUTE. IF A SUBSEQUENT SUIT IS FILED TO ENFORCE THE DECISION OF THE ARBITRATOR, THE PARTY PREVAILING IN SUCH SUIT SHALL BE ENTITLED TO RECOVER ITS ATTORNEY FEES AND COSTS, WHICH SHALL BE PAID BY THE NON-PREVAILING PARTY.

THIS CONTRACT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF FLORIDA, U.S.A. NOTWITHSTANDING CONFLICT OF LAW RULES. THE PARTIES AGREE THAT ANY LITIGATION INSTITUTED TO ENFORCE THE ARBITRATION PROVISIONS OF THIS AGREEMENT MAY BE BROUGHT IN A COURT OF COMPETENT JURISDICTION IN DUVAL COUNTY FLORIDA. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS CONTRACT OR THE SUBJECT VESSEL.

## ARTICLE XVIII-UNITED STATES APPROVAL

All obligations of the BUILDER herein are subject to compliance with all applicable laws and regulations of the United States Government and agencies thereof.

BUILDER Initials _BAZ_                          OWNER Initials _JB_

Page 12

**ARTICLE XIX-RELATIONSHIP OF THE PARTIES** The BUILDER accepts the relationship of trust and confidence established by this contract and covenants with the OWNER to cooperate with OWNER's architect and consultants, and to exercise the BUILDER's skill and judgment in furthering the interests of the OWNER in constructing the Vessel in accordance with the Contract Documents. BUILDER shall issue to OWNER a Request for Information ("RFI") identifying any concerns the BUILDER may have or identifying any errors or omissions in adequate detail of the Contract Documents which may affect the performance of the Work. OWNER, its representatives and/or consultants shall respond to such RFIs in a reasonably timely manner so as to not delay the Work.

**ARTICLE XX-SEVERABILITY**
In the event any paragraph, or paragraphs, of this Contract shall be declared invalid, illegal, or otherwise unenforceable, the remaining provisions of this Contract remain in full force and effect, provided that the essential terms and conditions of this Contract remain valid, binding, and enforceable.

**ARTICLE XXI-NO PARTY IS DRAFTER**
Should any provision of the Contract require interpretation or construction, each party acknowledges participation in the negotiation of this Contract and agrees that no provision of this Contract shall be construed against or interpreted to the disadvantage of any party hereto by any arbitrator or court by reason of such party having or being deemed to have structured, dictated, or drafted such provision.

**ARTICLE XXII -TIME IS OF THE ESSENCE**
The parties acknowledge and agree that time is of the essence in the performance of the Work as the subject Vessel will be used for OWNER's business purposes and any delay in the construction will cause OWNER to lose business revenue. The parties further acknowledge and agree that if there is a delay that is in breach of this Contract, OWNER may claim as potential damages a loss of business revenue.

**ARTICLE XXIII-ASSIGNMENT**
This Contract shall be binding upon and inure to the benefit of the parties herein and their respective successor and assigns. BUILDER shall not have the right to assign this Contract or such party's rights and obligations hereunder without the prior written consent of OWNER, which shall not be reasonably withheld; however, BUILDER acknowledges and agrees that OWNER may assign its rights and interest under this Contract, provided that in any such assignment OWNER remains obligated to pay the balance of the purchase price.

Page 13

BUILDER Initials _BNZ_                    OWNER Initials _JB_

## ACKNOWLEDGMENTS

In witness whereof, the parties hereto have executed this contract as of the date and year first above written.

St. Johns Ship Building Inc.,
BUILDER

DATE: _6/19/2020_

Intracoastal Marine Fueling, LLC,
OWNER

_Jason Butler_

DATE:_ 06/19/2020_

Page 14

BUILDER Initials _BAZ_

OWNER Initials _JB_

EXHIBIT "B"

# EXHIBIT

# C



**RitterChusid, LLP**
ATTORNEYS AT LAW

HERON BAY CORPORATE CENTER
5850 CORAL RIDGE DRIVE, SUITE 201
CORAL SPRINGS, FLORIDA 33076

GREGORY J. RITTER, P.A.
MITCHEL CHUSID, P.A.*
MITCHELL R. KATZ
JAMES F. SPOSATO*
GARY S. ROSNER*⁴
GLENN MEDNICK

(954) 340-2200
(561) 394-2180
FAX:   (954) 340-2210
(561) 394-2582
www.ritterchusid.com

BOCA OFFICE:
7000 WEST PALMETTO PARK ROAD
SUITE 502
BOCA RATON, FLORIDA 33433

REPLY TO CORAL SPRINGS OFFICE ONLY

JOSHUA W. BRANKAMP ≈
JORDAN R. CHUSID
EVAN S. ROSENBERG ⊿□
MICHAEL RUBIN ○
KRISTINA FORBES
JESSICA MAXEY

* ALSO ADMITTED IN NEW YORK
≈ ALSO ADMITTED IN OHIO
⊿ ALSO FL. SUP. CT. CERT.
   CIRC. CIV. MEDIATOR
□ ALSO ADMITTED TO U.S.
   SUPREME COURT
○ ALSO ADMITTED IN ONTARIO

June 27, 2022

*VIA U.S. MAIL RRR*
*& E-MAIL: RickF@JMSnet.com*
Rick Fernandez
JMS Naval Architects
70 Essex Street
Mystic, CT 06355

> Re:   Project: Intrepid Ocean/Intracoastal Marine Fueling Fuel Barge
>        Our Client: Intrepid Ocean Marine
>        Our File No.:  16021

Mr. Fernandez,

Our firm represents Intrepid Ocean Marine/Intracoastal Marine Fueling ("IOM") relating to the design and construction of its 10,000 Gallon Double Hull Tank Barge (the "Pickle"). As your records will reflect, IOM contracted with JMS Naval Architects ("JMS") to, among other things, design the Pickle. IOM contracted with St. Johns Ship Building Inc. ("St. Johns") to construct the Pickle. JMS' design included the purchase, placement and installation of two (2) Cox Powertrain Limited ("Cox") CXO300 Engines (the "Engines") that were distributed and sold by Ring Power Corporation ("RPC"). As all parties involved were aware, IOM constructed the Pickle to distribute and sell marine petroleum to vessels in and beyond the south Florida intracoastal waterways.

After several construction delays, IOM took possession of the Pickle on or about February 11, 2022. Shortly thereafter, IOM discovered significant problems with the Engines which only operated in "Limp Mode." These issues significantly impair the performance of the vessel, rendering it unable to safely navigate the intracoastal. As a result of the Engine issues, which have never performed properly, as represented or as advertised, IOM has been unable to operate the Pickle for its intended use, to sell marine petroleum. In fact, the Pickle has mostly remained docked at the Seminole Marina in Palm Beach Gardens, Florida since IOM took possession of the vessel.

EXHIBIT "C"

*JMS Naval Architects*
*June 27, 2022*
*Page 2*

Technicians from Ring Power and Cox have attempted to diagnose and remediate the Engine issues on several occasions, but have been unsuccessful. In fact, even the replacement of one of the Engines failed to correct or improve the performance issues which render IOM unable to properly and safely operate the Pickle. Significantly, the Pickle has experienced complete Engine failure on multiple occasions, including an Engine overload and failure that caused the Pickle to drift sideways through a drawbridge, endangering the safety of the crew and other vessels. As a result of these and similar safety concerns, IOM has been forced to leave the Pickle dockside to avoid potential liability, damages and injury.

IOM planned to showcase the one of a kind Pickle, along with its Cox Engines, at the 2022 Palm Beach International Boat Show in March of 2022. Unfortunately, due to the Engine issues, IOM was unable to operate the Pickle safely to attend the Boat Show and it missed a significant opportunity to promote IOM's marine fueling services and advertise its business.

Technicians from RPC and Cox opine that there are no defects in the Engines themselves, rather JMS should never have specified those Engines for application on the Pickle. Essentially, JMS was negligent in specifying the Engines, and that they will never propel the Pickle as intended.

IOM has incurred significant damages, including the costs of the purchase and installation of the Engines, costs associated with maintaining a crew to operate the vessel and insurance for a vessel that remains dockside. Further, IOM has and continues to lose significant daily revenue from the marine petroleum sales that the Pickle would be generating if it was operational. IOM has further incurred significant costs associated with licensing and hauling the Pickle in and out of the water for technicians to attempt to diagnose and assess the Engine application issues.

Without fully operational Engines, IOM must resort to procuring a tug boat to tow the pickle so that it can transact its business as intended. The lead time and cost to purchase a tug is significant.

This correspondence will serve as IOM's formal request for the disclosure of JMS' insurance information for February 2021 to the present. Pursuant to Section 627.4137 of the Florida Statutes, please provide our office with the following regarding each insurer that may provide JMS with relevant coverage for IOM's claims in this matter:

(a)     name and address of each insurer;

(b)     name and address of each insured;

(c)     coverage limits: (this means all coverages provided by the policy including, but not limited to, liability, errors and omissions, and property damage coverages);

(d)     the statement of any policy or coverage defense which each insured reasonably believes is available to such insurer at the time of filing such statement;

*JMS Naval Architects*
*June 27, 2022*
*Page 3*

    (e)      attach a copy of the policy and declaration sheet for each policy; and

    (f)      name and acknowledge of each known insurer which may provide any additional coverage.

Based upon the foregoing, IOM has and continues to incur significant financial losses on a daily basis as a direct result of JMS' defective design of the Pickle. Please report this claim to JMS' insurers as IOM remains committed to recovering its losses.

We are in the process of scheduling a pre-suit mediation with Cox and RPC. Please let us know if JMS and/or its insurers are interested in pursuing the potential for an alternative dispute resolution. Otherwise, we will do what is necessary to protect IOM's rights, including the institution of a lawsuit against JMS, Cox, RPC and St. Johns. I can be reached by cell (561) 901-9779 if you would like to discuss this matter further. Thank you.

Sincerely,

James E. Sposato

/jfs
cc. Jasen Butler



**JOSEPH ABRUZZO**

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

# RECEIPT
4674907

Printed On:
11/08/2022 04:00
Page 1 of 1

| Receipt Number: 4674907 - Date 11/08/2022  Time 4:00PM | | | |
|---|---|---|---|
| **Received of:** | Conrad and Scherer<br>633 South Federal Highway<br>Eighth Floor<br>Fort Lauderdale, FL 33301 | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | 401.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 401.00 |
| **Receipt ID:** | 11042839 | **Remaining Balance:** | 0.00 |
| **Division:** | AA: Circuit Civil Central - AA(Civil) | | |

| Case# 50-2022-CA-010934-XXXX-MB -- PLAINTIFF/PETITIONER: INTREPID OCEANS MARINE LLC | | | |
|---|---|---|---|
| **Item** | **Balance** | **Paid** | **Bal Remaining** |
| Fees | 401.00 | 401.00 | 0.00 |
| **Case Total** | **401.00** | **401.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFiling_CREDITCARD | 5552578 | **401.00** |
| **Total Received** | | **401.00** |
| **Total Paid** | | **401.00** |



**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.

NOT A CERTIFIED COPY

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

**CASE NO.: 50-2022-CA-010934-XXXX-MB**

**INTREPID OCEANS MARINE, LLC.,**

      Plaintiff,

v.

**JMS NAVAL ARCHITECTS, LLC.,**

      Defendant.

_____/

### SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this action on Defendant:

> **JMS Naval Architects, LLC**
> **c/o Mathew J. Curtiss**
> **Block Janney & Pascal, LLC**
> **12 Roosevelt Avenue, Mystic, CT 06355**

      The Defendant is required to serve written defenses to the Complaint on Plaintiffs' attorney, **Conrad & Scherer, LLP**, whose address is **633 South Federal Highway, 8th Floor, Fort Lauderdale, FL 33301**, within 20 days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

      DATED on **Nov 17 2022**, 2022.

**JOSEPH ABRUZZO**
Clerk of the Court

By: _____
As Deputy Clerk **JOSIE LUCCE**

NOT A CERTIFIED COPY

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiffs' Attorney" named below.

If you are a _person with a disability_ who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings Jr., MPA, PHR, the Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

**Plaintiffs' Attorneys:**
**CONRAD & SCHERER LLP**
**633 South Federal Highway, 8th Floor**
**Fort Lauderdale, Florida 33301**

**JAMES F. SPOSATO**
**Florida Bar No. 644171**

**Emails:**
Primary: JSposato@conradscherer.com;
AMaya@conradscherer.com;
Secondary: JThompson@conradscherer.com

2

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiffs Attorney" (Demandante o Abogado del Demandante).

Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.   Tenga la amabilidad de ponerse en contacto con William Hutchings Jr., MPA, PHR, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.

Plaintiffs' Attorneys:
CONRAD & SCHERER LLP
633 South Federal Highway, 8th Floor
Fort Lauderdale, Florida 33301

JAMES F. SPOSATO
Florida Bar No. 644171

Emails:
Primary: JSposato@conradscherer.com;
AMaya@conradscherer.com;
Secondary: JThompson@conradscherer.com

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiffs Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings Jr., MPA, PHR, k  donatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telef n li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711.

Plaintiffs' Attorneys:
**CONRAD & SCHERER LLP**
**633 South Federal Highway, 8th Floor**
**Fort Lauderdale, Florida 33301**

Emails:
Primary: JSposato@conradscherer.com;
AMaya@conradscherer.com;
Secondary: JThompson@conradscherer.com

**JAMES F. SPOSATO**
**Florida Bar No. 644171**

4

### ENPÒTAN

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/ Pwokire a" (Pleyan oswa avoka li) non anba a.

Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte [identify applicable court personnel by name], Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan William Hutchings Jr., MPA, PHR, 205 N. Dixie Highway, West Palm Beach, Florida 33401;  (561) 355-4380, fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribinal la mwens pase 7 jou; si ou gen pwoblèm pou w tande byen oswa pou w pale klè, rele 711.

Plaintiffs' Attorneys:                          Emails:
**CONRAD & SCHERER LLP**           Primary: JSposato@conradscherer.com;
**633 South Federal Highway, 8th Floor**   AMaya@conradscherer.com;
**Fort Lauderdale, Florida 33301**          Secondary: JThompson@conradscherer.com

**JAMES F. SPOSATO**
**Florida Bar No. 644171**

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

IN RE: STANDING ORDER FOR
CASE MANAGEMENT FOR SUBMISSION
OF AGREED CASE MANAGEMENT PLAN FOR
CASES FILED ON OR AFTER APRIL 30, 2021

_____   /

**STANDING ORDER FOR CASE MANAGEMENT AND SUBMISSION OF AGREED
CASE MANAGEMENT PLAN IN CIVIL CASES
IN THE FIFTEENTH JUDICIAL CIRCUIT FILED ON OR AFTER APRIL 30, 2021
(DCMSO)**

 Pursuant to Florida Rule of Civil Procedure 1.200(a), Florida Rule of General Practice and Judicial Administration 2.545, and Administrative Order 3.107 entered by the Chief Judge of this Circuit, the parties are informed of the following information and procedures applicable to civil lawsuits filed in the Circuit Court on or after April 30, 2021:

 1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this Order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service.

 2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in good faith and attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: https://15thcircuit.com/civil-differentiated-forms-and-orders.

Unless all of the Defendants have been served and have been defaulted or dropped, an Agreed Case Management Plan must be submitted to the assigned divisional queue via the Court's online scheduling system (OLS) as an attachment, in PDF format, to a proposed Order Accepting Agreed Case Management Plan on or before 130 days from the date of filing of the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan by the applicable deadline, a

_____

[1] Case Track options include Expedited, Streamlined, General, or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

case management conference will be scheduled by the Court or the Court will review and issue an Order Implementing Case Management Plan without agreement of the Parties.  No matters that arise as a result of this standing order, including lack of agreement, will be set on the Court's Uniform Motion Calendar and will, instead, be settled by the Court either at the case management conference or via an Order Implementing Case Management Plan without agreement of the parties. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

If all Defendants are served and defaulted or dropped, the Plaintiff will file the appropriate documentation to pursue a Default Final Judgment within 130 days of the filing of the complaint and Final Judgment is to be entered or set for hearing within 150 days of the filing of the complaint.

3.  **MEDIATION/ALTERNATIVE DISPUTE RESOLUTION (ADR)**.  ADR provides parties with an out-of-court alternative to settling disagreements. Mediation is a type of ADR wherein an independent third party attempts to arrange a settlement at a conference between the parties. The Court requires the parties to participate in Mediation prior to trial unless the parties agree to another form of ADR.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, on this 26 day of April, 2021.

_____
**Administrative Circuit Judge**



**JOSEPH ABRUZZO**

# RECEIPT
4683597

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

Printed On:
11/17/2022 04:21
Page 1 of 1

| Receipt Number: 4683597 - Date 11/17/2022  Time 4:21PM | |
|---|---|
| **Received of:** | Conrad and Scherer<br>633 South Federal Highway<br>Eighth Floor<br>Fort Lauderdale, FL 33301 |

| | | | |
|---|---|---|---|
| **Cashier Name:** | ADMIN | **Balance Owed:** | 10.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 10.00 |
| **Receipt ID:** | 11051958 | **Remaining Balance:** | 0.00 |
| **Division:** | AA: Circuit Civil Central - AA(Civil) | | |

| Case# 50-2022-CA-010934-XXXX-MB -- PLAINTIFF/PETITIONER: INTREPID OCEANS MARINE LLC | | | |
|---|---|---|---|
| **Item** | **Balance** | **Paid** | **Bal Remaining** |
| Fees | 10.00 | 10.00 | 0.00 |
| **Case Total** | **10.00** | **10.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFiling_CREDITCARD | 5644703 | **10.00** |
| **Total Received** | | **10.00** |
| **Total Paid** | | **10.00** |

**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.



IN THE CIRCUIT COURT OF THE 15th
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-010934-XXXX-
MB

INTREPID OCEANS MARINE, LLC.,

      Plaintiff,

vs.

JMS NAVAL ARCHITECTS, LLC.,

      Defendant.

_____/

## PLAINTIFF'S NOTICE OF FILING

    Plaintiff, INTREPID OCEANS MARINE, LLC., through undersigned counsel, hereby gives Notice of Filing Verified Return of Service attached as **Exhibit "A"**.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing pleading was sent by e-mail via the Florida Courts E-Filing Portal this 7th day of December 2022 to all those listed on the attached Service List.

CONRAD & SCHERER, LLP
Counsel for Plaintiff
633 South Federal Highway, Ste. 800
Fort Lauderdale, FL 33301
Tel:(954) 847-3328 Fax:(954) 463-9244
Email: jsposato@conradscherer.com
E-service: eservice@conradscherer.com

By:    /s/James Sposato
        James Sposato, Esq.
        Florida Bar No.: 644171

NOT A CERTIFIED COPY

# EXHIBIT A

IN THE CIRCUIT/COUNTY COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

Intrepid Oceans Marine LLC

Case Number: 50-2022-CA-010934-XXXX-MB

Plaintiff/Petitioner

v.

JMS Naval Architects LLC

Documents to be Served: Summons

Defendant/Respondent

### VERIFIED RETURN OF SERVICE

I received the process on the 28ᵗʰ day of November, 2022 at 3:19 o'clock P.m.

I served the process on the 6ᵗʰ day of December, 20 22 at 10:00 o'clock A.m. at the following location

12 Roosevelt Ave., Mystic, CT 06355 and served Mathew J. Curtiss in the following manner:

Address/ City/County and State                                    Name of Person Served

✓ **INDIVIDUAL SERVICE** - Fla. Stat. §48.031(1)(a) - By delivering to the person named above a true copy of the process, with the date and hour of service endorsed thereon by me, along with a copy of the complaint, petition, or other initial court document.

_____ **SUBSTITUTE SERVICE** - By leaving a true copy of the process, with the date and hour of service endorsed thereon by me, along with a copy of the complaint, petition, or other initial pleading or court document, to the person named above as the:

_____ Co-Resident at the usual place of abode who is 15 years of age or older - Fla. Stat. §48.031(1)(a)
_____ Spouse as long as within county, spouse live together and spouse agrees to be served - Fla. Stat. §48.031(2)(a)
_____ Person in Charge - Fla. Stat. §48.031(2)(b) _____ (list position per AO 2.702)
_____ Partner of a partnership - Fla. Stat. §48.061(1)
_____ Person in Charge at Private Mailbox - Fla. Stat. §48.031(6)

✓ **CORPORATE SERVICE** - By delivering a true copy of this process, with the date and hour of service endorsed thereon by me, along with a copy of the complaint, petition, or other initial pleading or court document to the person named above as the:

_____ Highest Ranking Officer - Fla. Stat. §48.081(5)_____ (list position per AO 2.702)
✓ Registered Agent of the within named corporation or employee of Registered Agent - Fla. Stat§48.081(3)(a) and §48.091
_____ Employee of the within named corporation at said corporation's place of business because service could not be made on the registered agent for failure to comply with F.S. 48.091._____ (list position per AO 2.702)

_____ **POSTED SERVICE** (Landlord-Tenant Only) - By attaching a true copy of this process with the date and hour of service endorsed thereon by me, together with a copy of the complaint of petition, to a conspicuous place on the property described within after making two (2) attempts not less than six (6) hours apart in that the tenant could not be found and there was no person residing therein, fifteen (15) years of age or older upon whom service could be made.

First Attempt: _____ Second Attempt: _____
                    Date and Time                                    Date and Time

Pursuant to 15th Judicial Circuit Admin. Order 2.702, the following is a physical description of the person upon whom process was executed:

_____

Pursuant to 15th Judicial Circuit Admin. Order 2.702, the following is a descriptive narrative (comments) of the manner of execution:

_____
_____
_____

I informed the party of the contents of the documents being served.          YES  -  NO   (circle one)
Military Status_____     Marital Status_____
Under penalties of perjury, I swear or affirm, pursuant to Fla. Stat. § 92.525 that I have read the foregoing and the facts stated there are true. I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the county in which service was made.

Louis J. Sullivan

Printed Name of Certified Process Server          CPS or Other Number & county/state of license          Date

Signature of Certified Process Server              For:  Name of Attorney or Pro Se Litigant

NOT A CERTIFIED COPY